## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| KERISSA PETTY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 16-CV-109-GKF-FHM |
| | ) | |
| DEPARTMENT OF HUMAN SERVICES; ED | ) | |
| LAKE, in his individual capacity; SHANA | ) | |
| YINGLING, in her individual capacity; HALLY | ) | |
| KIRBY, in her individual capacity, and JOHN | ) | |
| DOES 1-10. | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION AND ORDER

Before the court is the Motion to Dismiss [Dkt. #9] of defendants the Department of

Human Services ("DHS"), Ed Lake, Shana Yingling, and Hally Kirby.  This case arises from the

DHS's removal of two children from their mother's custody.  Plaintiff Kerissa Petty alleges that

the defendants deprived her of the custody of her children without either notice or a hearing in

violation of her rights to due process under the Fourteenth Amendment to the United States

Constitution and Article II, § 7 of the Oklahoma Constitution.  Defendants move to dismiss

Petty's Third Amended Petition[1] for failure to state a claim.  For the reasons set forth in this

Opinion and Order, the defendants' motion is granted in part and denied in part.

### I.    FACTUAL ALLEGATIONS

The following facts are derived from Petty's Third Amended Petition ("Petition").  Petty

has two children.  The first is approximately six years old, and the second is currently one year

---

[1] The defendants removed this case from state court following the filing of Petty's Third Amended Petition, the first of her petitions to allege a claim under federal law.

old.  Petty gave birth to her second child on March 18, 2015.  The child was born prematurely and remained in the neonatal care unit of the hospital for several days after its birth.

While her second child was still in the hospital, Petty received a telephone call at her home from Shana Yingling, a DHS caseworker.  Yingling asked Petty if she could visit her home.  Petty agreed.  On or around March 27, 2015, Yingling arrived at Petty's home.  Yingling told Petty that the DHS "had evidence and charges of abuse and neglect" and that she was removing the children from Petty's custody.  [Dkt. #2-16, p. 2].  Yingling told Petty that either she could sign a Family Services Agreement, under which her children would be placed in the care and custody of their grandmother (Petty's mother), or Yingling "would physically remove the child[ren] from [Petty's] custody and file charges with the District Attorney's office and involve the Sheriff."  [*Id.*]

According to the Petition, Yingling only presented Petty with portions of the Family Services Agreement.  Neither Yingling nor the paperwork she provided warned Petty that if she signed the agreement she would be waiving her right to a hearing.

Petty ultimately signed the Family Services Agreement.  According to the Petition, she did so based on Yingling's threat to immediately remove her children and initiate a criminal investigation unless she signed the agreement.  After the agreement was signed, Petty's eldest child was taken and placed in the custody of the child's grandmother.  Yingling told Petty that, unless further notified, she could not visit her children (including her newborn who was still in the hospital) without the grandmother's supervision.

Petty did not receive a hearing either before or after being deprived of the custody of her children.  The DHS later returned the children to Petty several months after their removal.

Ed Lake is the director of the DHS.  According to the Petition, Lake was aware of and/or acquiesced in the DHS's practice of "failing to provide due process hearings when parents sign a Family Service Agreement."  [*Id.* at 13].

Hally Kirby is Yingling's supervisor.  The Petition does not allege any facts regarding Kirby's involvement in this case.

## II.   DISCUSSION

"To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain 'enough facts to state a claim to relief that is plausible on its face.'"  *Schrock v. Wyeth, Inc.*, 727 F.3d 1273, 1280 (10th Cir. 2013) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).  When applying this standard, a court must accept as true all well-pleaded factual allegations and then ask whether those facts state a plausible claim for relief.  *See id.* at 679.  Allegations that state "legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action" "are not entitled to the assumption of truth."  *Id.* at 678-79.

As just mentioned, Petty alleges that the defendants deprived her of the custody of her children without either notice or a hearing in violation of her rights to due process under the Fourteenth Amendment and Article II, § 7 of the Oklahoma Constitution.  The defendants move to dismiss these claims on several grounds.  Because the issues involved with these claims differ, the court analyzes Petty's federal and state claims separately.

### A.  *Federal Due Process Claims*

The court starts with Petty's federal claims.  The Fourteenth Amendment prohibits any state from depriving a "person of life, liberty, or property, without due process of law."  U.S.

Const. amend. XIV. Among the liberties protected by this provision is a parent's right to the "care, custody and management" of his or her children. *Santosky v. Kramer,* 455 U.S. 745, 753 (1982); *accord United States v. White*, 782 F.3d 1118, 1138 (10th Cir. 2015); *Hollingsworth v. Hill*, 110 F.3d 733, 738–39 (10th Cir. 1997). In other words, a state may not remove a child from her parents' custody without due process of law. "Ordinarily, due process requires that the state provide parents with 'predeprivation notice and a hearing'—that is, notice and an opportunity to be heard *before* state officials remove children from the home." *Arredondo v. Locklear*, 462 F.3d 1292, 1298 (10th Cir. 2006) (emphasis in original) (quoting *Hollingsworth*, 110 F.3d at 739). The right to predeprivation process, however, is not absolute. Courts "have long recognized that extraordinary circumstances may justify the state in postponing the hearing until after the event." *Id.* (internal quotation marks omitted). "Thus, in emergency circumstances which pose an immediate threat to the safety of a child, officials may temporarily deprive a parent of custody without parental consent or a court order." *Hollingsworth*, 110 F.3d at 739. "For such a procedure to comport with due process . . . , the state must provide a prompt postdeprivation hearing." *Arredondo*, 462 F.3d at 1298.

Individuals deprived of their Fourteenth Amendment rights may seek redress under 42 U.S.C. § 1983. Section 1983 provides a cause of action against any "person" who deprives an individual of federally guaranteed rights "under color" of state law. *See* 42 U.S.C. § 1983. As relevant here, § 1983 includes two important limitations. First, states and their constituent agencies are not "persons" within the meaning of § 1983 and thus are not amenable to suit under the statute. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 65–66 (1989). Second, "[b]ecause vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the

Constitution." *Iqbal*, 556 U.S. at 676; *see also Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 767–69 (10th Cir. 2013) (setting forth the standards for § 1983 supervisory liability post-*Iqbal*).

Here, Petty asserts a due process claim under § 1983, alleging that the defendants deprived her of the custody of her children without either notice or a hearing.  The defendants, in turn, raise several grounds for dismissal.  They contend that the Petition lacks the specificity necessary to state a plausible due process claim, that its allegations indicate that Petty waived her right to a hearing, that the individual defendants are entitled to qualified immunity, and that the DHS is not subject to suit under § 1983.

The court's analysis of these arguments differs by defendant.  As an initial matter, the court agrees that Petty's § 1983 action fails to state a claim against Kirby and the DHS.  The Petition does not contain any allegations regarding Kirby's involvement in this case, and the DHS, as a state agency, is not a "person" amenable to suit under § 1983.  For these reasons, Petty's federal claims against these defendants are dismissed.

As for Yingling and Lake, further explanation is required.  The court starts with Yingling. Petty alleges that Yingling, acting as a DHS caseworker, removed her children without either notice or a hearing (pre- or- postdeprivation).  This is sufficient to state a due process violation. Although Petty admits to signing a Family Service Agreement, she alleges that she was only presented with portions of the agreement, that those portions included no clear hearing waiver, and that Yingling did not inform her that if she signed the agreement she would not receive a hearing.  Together these allegations, taken as true, indicate that Petty did not knowingly waive her due process rights.  *Cf. United States v. Oliver*, 525 F.2d 731, 735 (8th Cir. 1975) (noting that a waiver of constitutional rights is ineffective unless "voluntary, knowing, and intelligent").

That leaves Yingling's qualified immunity defense.  "The doctrine of qualified immunity shields government officials from liability . . . when 'their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *McDonald v. Wise*, 769 F.3d 1202, 1215 (10th Cir. 2014) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982)).  Here, Petty's right to notice and a hearing prior to (or at the least promptly after) being deprived of her children was clearly established at the time her children were removed.  *See Hollingsworth*, 110 F.3d at 740 ("Ms. Hollingsworth's right to notice and an opportunity to be heard prior to the deprivation of her liberty interest in the care, custody, and management of her children was clearly established in January 1993. . . .").  Yinling, therefore, is not entitled to qualified immunity.  Her request to dismiss Petty's federal claim is denied.

Finally, the court considers Petty's claim against Lake.  Petty's allegations concerning Lake are brief.  She alleges that "Lake was aware of the policies, customs, and practices of DHS failing to provide due process hearings when parents sign a Family Service Agreement," and that he "supervise[d] the promulgation, implementation, and execution of th[ose] polic[ies], custom[s], and practice[s]."  [Dkt. #2-16, p. 13].[2]  These allegations, without more, do not state a due process violation.  There is nothing unconstitutional about asking an individual to waive his or her due process rights provided the waiver is knowing and voluntary.  *See Democratic Nat'l Comm. v. Republican Nat'l Comm.*, 673 F.3d 192, 205 (3d Cir. 2012) ("Constitutional rights may be contractually waived where the facts and circumstances surrounding the waiver make it clear that the party foregoing its rights has done so of its own volition, with full understanding of the

---

[2] Petty's allegations concerning Lake include several legal conclusions and threadbare recitals of the elements of a cause of action.  [*See*, *e.g.*, Dkt. #2-16, p. 13 ("Ed Lake was aware and/or acquiesced in the promulgation, implementation, and execution of the policy, customs and practices alleged herein and that actually caused a deprivation of liberty without due process carried out by [Yingling] . . . .")].  The court has disregarded these allegations for purposes of evaluating the sufficiency of the Petition.  *See Iqbal*, 556 U.S. at 678–79.

consequences of its waiver." (alterations omitted) (internal quotation marks omitted)); *see also D. H. Overmyer Co. Inc., of Ohio v. Frick Co.*, 405 U.S. 174, 185 (1972) ("The due process rights to notice and hearing prior to a civil judgment are subject to waiver."). Petty does not allege that the Family Service Agreement, in its entirety, lacks a clear waiver of hearing rights, nor does she allege that Lake's actions caused Yingling to deny Petty a hearing without obtaining a valid waiver. For these reasons, Petty's federal claim against Lake is dismissed.

In sum, the court grants the defendants' motion to dismiss Petty's § 1983 action for all defendants except Yingling. As to Yingling, the court holds that Petty's allegations state a cognizable due process violation and that her claim is not barred by qualified immunity.

### B.  State Due Process Claims

The court next considers Petty's state due process claims. The protections afforded under the Due Process Clause of the Oklahoma Constitution, Okla. Const. art. II, § 7, "are coextensive with those of its federal counterpart." *Oklahoma Ass'n for Equitable Taxation v. City of Oklahoma City*, 901 P.2d 800, 805 (Okla. 1995). The issue here, therefore, is not whether the facts as alleged state a due process violation (they do), but rather whether Oklahoma law provides a remedy.

Relying on *Bosh v. Cherokee County Building Authority*, 305 P.3d 944 (Okla. 2013), Petty contends that the Oklahoma Constitution itself provides a cause of action for her due process claim. In *Bosh*, the Oklahoma Supreme Court recognized a private action for excessive force under Article II, § 30 of the Oklahoma Constitution, notwithstanding provisions of the Oklahoma Governmental Tort Claims Act ("OGTCA") barring such claims. *See id.* at 1001. In reaching this result, the court reasoned that the OGTCA could not "be construed as immunizing the state completely from all liability for violations of the constitutional rights of its citizens,"

because to hold otherwise "would . . . render the Constitutional protections afforded the citizens of [the] State as ineffective and a nullity." *Id.* Shortly afterward, in *Perry v. City of Norman*, 341 P.3d 689 (Okla. 2014), the Oklahoma Supreme Court limited *Bosh* to its specific facts, holding that a *Bosh* claim "for excessive force . . . may not be brought against a governmental entity when a cause of action under the OGTCA is available." *Id.* at 693. In that situation, the court explained, "the plaintiff's remedy belongs exclusively within the confines of the OGTCA." *Id.*

Here, Petty contends that there is no available statutory remedy for her due process claim and, therefore, that she may bring her claim directly under Article II, § 7 of the Oklahoma Constitution. In response, the defendants submit that the Oklahoma Supreme Court has not applied *Bosh* beyond the realm of excessive force and that this court should not extend the decision further.[3]

As these arguments indicate, Petty's state due process claim raises a novel and complex issue of state law. The scope of *Bosh*'s holding has been a source of considerable disagreement among Oklahoma's federal and lower state courts. *Compare Koch v. Juber*, No. CIV-13-0750-HE, 2014 WL 2171753, at *3 (W.D. Okla. May 23, 2014) (holding that *Bosh* does not extend to due process violations and "conclude[ing] that *Bosh* should be narrowly interpreted and applied only to excessive force claims"), *and Bruning v. City of Guthrie, Okla.*, No. CIV-15-0003-HE,

---

[3] The defendants also contend that the OGTCA provides a remedy for Petty's constitutional injury and thus that she may not pursue her claim under *Bosh*. The court disagrees. The OGTCA provides a remedy for loss resulting from governmental torts "only where the state or political subdivision, *if a private person or entity*, would be liable for money damages under [Oklahoma] law." 51 O.S. § 153(A) (emphasis added). The injury Petty has alleged is not the removal of her children, but rather their removal without adequate due process. *See Peery v. Brakke*, 826 F.2d 740, 747 (8th Cir. 1987); *Baker v. McCollan*, 443 U.S. 137, 145 (1979). Because private actors are not subject to the obligations imposed under the Due Process Clause of the Oklahoma Constitution, they could not be held liable for the injuries alleged. *See Helfinstine v. Martin*, 561 P.2d 951, 958 (Okla. 1977). Consequently, the OGTCA does not provide a remedy for Petty's injury.

2015 WL 4925995, at *8–9 (W.D. Okla. Aug. 18, 2015) (same), *with Halley v. Oklahoma ex rel. Oklahoma State Dep't of Human Servs.*, No. 14-CV-562-JHP, 2016 WL 1301125, at *4 (E.D. Okla. Mar. 31, 2016) (holding that *Bosh* extends to due process claims under Article II, § 7 of the Oklahoma Constitution), *and White v. City of Tulsa*, Okla., 979 F. Supp. 2d 1246, 1249  (N.D. Okla. 2013) (holding that *Bosh* extends to all search and seizure violations under Article II, § 30 of the Oklahoma Constitution, not merely those involving excessive force), *with GJA v. Oklahoma Dep't of Human Servs.*, 347 P.3d 310, 316 (Okla. Civ. App. 2015) ("The *Bosh* case is not limited to its facts and specific holding.  It . . .  recognizes a broader scope of actionable claims based upon violations of constitutional rights." (dictum)).  Although *Perry* highlights an important limitation on *Bosh*'s holding, it is still unclear whether *Bosh* extends to other rights protected under the Oklahoma Constitution and, if so, which ones.  Given this uncertainty, the court concludes that Petty's state due process claims are best resolved in state court.  *See* 28 U.S.C. § 1367(c)(1) (stating that "district courts may decline to exercise supplemental jurisdiction over a claim" if it "raises a novel or complex issue of State law").  The court, therefore, declines to exercise supplemental jurisdiction over these claims.

WHEREFORE, the defendants' Motion to Dismiss [Dkt. #9] is granted in part and denied in part.  The motion is granted with respect to Petty's federal claims against Kirby, Lake, and the DHS and denied as to all remaining claims.  The court declines to exercise supplemental jurisdiction over Petty's state claims and, therefore, *sua sponte* dismisses those claims without prejudice to their refiling in state court.

Petty is granted leave to file a fourth amended complaint on or before June 20, 2016.  The amendments, if any, shall be limited to remedying the deficiencies identified in her § 1983 claims against Kirby and Lake.

IT IS SO ORDERED this 9th day of June, 2016.

GREGORY K. FRIZZELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT